# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**KIRENDA WELCH,**

    **Plaintiff,**

vs.                                     Case No.:

**MIKE WILLIAMS**, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida; **CATHERINE THOMPSON,** Individually; **A.B. NICHOLS,** Individually; **T.J. TAYLOR,** Individually; **S.B. WARREN**, Individually; **G.T. MILBERGER**, Individually; and **E. HOLDEN**, Individually,

    **Defendants.**

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kirenda Welch, brings this action seeking monetary damages, attorney's fees, and costs against Defendants and alleges the following:

1. This is an action for damages, attorney's fees, and costs for the deprivation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, as well as claims under Florida law.

## JURISDICTION AND VENUE

2. Plaintiff invokes the jurisdiction of this Court pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §§1331 and 1343, as to the federal claims herein. The Court has supplemental jurisdiction as to the state law claims pursuant to 28 U.S.C. §1367.

3. Venue in this district is proper pursuant to 28 U.S.C. §1391, in that the cause of action arose in this district.

## PARTIES

4. Plaintiff, Kirenda Welch, is a resident of Jacksonville, Duval County, Florida and a citizen of the United States.

5. Defendant, Catherine Thompson, was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office ("JSO") employed as a correctional officer at the John E. Goode Pretrial Detention Facility ("Pretrial Detention Facility"). At all times relevant to this cause, Defendant Thompson acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

6. Defendant, A.B. Nichols, was, at all times relevant, a sworn member of JSO employed as a correctional officer at the Pretrial Detention Facility. At all times relevant to this cause, Defendant Nichols acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

7. Defendant, T.J. Taylor, was, at all times relevant, a sworn member of JSO employed as a correctional officer at the Pretrial Detention Facility. At all times relevant to this cause, Defendant Taylor acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

8. Defendant, S. B. Warren, was, at all times relevant, a sworn member of JSO employed as a correctional officer at the Pretrial Detention Facility. At all times relevant to this cause, Defendant Warren acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

9. Defendant, G. T. Milberger, was, at all times relevant, a sworn member of JSO employed as a correctional officer at the Pretrial Detention Facility. At all times relevant to this

cause, Defendant Milberger acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

10. Defendant, E. Holden, was, at all times relevant, a sworn member of JSO employed as a correctional officer at the Pretrial Detention Facility. At all times relevant to this cause, Defendant Holden acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

11. Defendant, Mike Williams, in his official capacity as Sheriff of the City of Jacksonville, Florida, was at all times relevant, responsible for the supervision, training, instruction, discipline, control, and conduct of officers and correctional officers of JSO and made policy for JSO with respect to seizures, searches, arrests, and use of force. At all times relevant, Defendant Williams had the power, right, and duty to train and control his officers, agents, and employees to conform to the Constitution of the United States and to ensure that all orders, rules, instructions, and regulations promulgated for JSO were consistent with the Constitution of the United States. At all times relevant, Sheriff Williams' agents and employees acted under color of state of law.

## FACTUAL ALLEGATIONS

12. On or about June 29, 2018, Officer Howell of JSO pulled over Ms. Welch for performing an illegal U-turn.

13. During the traffic stop, Officer Howell served an administrative capias on Ms. Welch and arrested her for a violation of section 324.201(2), Florida Statutes, Financial Responsibility-Driving While Drivers License Suspended.

14. Officer Howell transported Ms. Welch, who was two months pregnant at the time, to the Pretrial Detention Facility.

3

15. On or between June 29, 2018 and June 30, 2018, Ms. Welch arrived at the Pretrial Detention Facility and began the initial booking process.

16. At some point during the booking process, Ms. Welch encountered Defendant Correctional Officer Catherine Thompson, who gave Welch a soiled pair of pants.

17. Ms. Welch immediately complained the pants were giving her a rash on her legs.

18. Defendant Thompson responded to Ms. Welch's complaints by telling Ms. Welch that if Welch would not put the pants on, then Defendant Thompson would do it for her.

19. This led to an exchange of words between Defendant Thompson and Ms. Welch, during which Defendant Thompson began using racially derogatory terms, calling Ms. Welch a "Kunta Kinte," a racially derogatory term originating from the Novel, <u>Roots: The Saga of An American Family.</u> Welch is black. Thompson is white.

20. Defendant Thompson placed Ms. Welch in four-point restraints, which Defendant Officer Taylor provided to Thompson, fully restraining Welch's arms and legs together, and led a compliant Ms. Welch to an isolation cell on the first floor of the Pretrial Detention Facility.

21. The isolation cell had no surveillance videos.

22. Once inside the isolation cell, Defendant Thompson punched Ms. Welch in the middle of the forehead, while Welch was compliant, fully restrained in four-point restraints, and unable to resist.

23. Defendant Thompson next slammed the restrained Ms. Welch's head into the isolation cell wall.

24. Defendant Thompson then held down the shackled and pregnant Ms. Welch with one hand, and violently punched Ms. Welch in the stomach a number of times.

25. Defendant Thompson concluded her attack by spraying Ms. Welch in the face with pepper spray while her arms and legs remained shackled.

26. Defendant Nichols encouraged Defendant Thompson to use the pepper spray on the fully restrained Welch and watched as Thompson did so.

27. With pepper spray in her face, Ms. Welch was placed in a restraint chair and told repeatedly to calm down.

28. In total, Defendant Thompson hit the compliant and restrained Ms. Welch more than twenty times once inside the isolation cell, which had no surveillance video.

29. Multiple JSO officers, including Defendants Sergeant Nichols, Officer Taylor, Officer Holden, Officer Warren, and Officer Milberger were present and witnessed Defendant Thompson mercilessly attacking the pregnant, fully restrained Ms. Welch, and took no action to prevent or stop the attack despite knowledge of the same and the ability to intervene to stop the attack.

30. The attack concluded with Defendants placing Ms. Welch in a pro-restraint chair.

31. Defendant Thompson was arrested following the attack on Ms. Welch for Battery and Official Misconduct, in violation of sections 838.022(1)(a) and 784.03(1)(a), Florida Statutes.

32. Ultimately, Defendant Thompson was charged with Battery and two counts of Official Misconduct (one for the attack itself and the other for falsifying both the Response to Resistance Report and Department of Corrections' Incident Report).

33. While Defendant Thompson, a probationary employee at the time was terminated; no other individuals, including the named individual Defendants, were investigated or punished for their role in the incident, despite their involved in the use of force against a pregnant and fully restrained Ms. Welch.

34. Defendant Thompson confessed to both the battery committed against Ms. Welch and to falsifying the official records.

35. Defendant Thompson's use of force is part of a longstanding practice by JSO of using and tolerating the use of force against individuals who are not resisting.

36. In December 2004, a member of JSO slammed Sammy Lee Evans to the ground. As a result, Mr. Evans's head hit the ground with such force that it resulted in Mr. Evans' death. Mr. Evans was not resisting the arrest, which was for an open container of alcohol. The JSO member involved was not disciplined or reprimanded for their use of force against Mr. Evans.

37. In January 2006, members of JSO broke the right jaw of Bryan Barnes when effectuating his arrest. The JSO members struck Barnes despite the fact that Barnes complied with all of their commands and did not resist the officers while being arrested. *See Barnes v. Sheriff Rutherford, et. al.,* Case No.:3:08-cv-217-J-33JRK (M.D. Fla. Jacksonville Division). There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until prompted by the City of Jacksonville Office of General Counsel sending of a complaint to JSO in January 12, 2011. This complaint and the accompanying investigation occurred four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit was settled. The JSO Internal Affairs Unit concluded as follows relating to Mr. Barnes' incident: "that charge of EXCESSIVE FORCE against Police Lieutenant R. W. Beltz #7862 and Police Officer C. M. Weippert # 7829 be classified as NOT SUSTAINED.

38. In January 2006, a member of JSO kneed Ronal Ferrera in the face three times while Ferrera was handcuffed. The JSO member involved was not disciplined or reprimanded for their use of force against Mr. Ferrera.

6

39. In October 2007, two members of JSO, along with a civilian "ride along," rammed the head of Colin Runge into a steel door in the intake area of the jail. At the time, Runge was fully secured and unable to resist the officers as he was in total appendage restraint, otherwise known as being "hog-tied."

40. In January 2008, a member of JSO slammed Larue Perkins onto the pavement of a parking lot, breaking his jaw. At the time, Perkins was complying with the officer's directive to leave the parking area. Perkins was then falsely arrested after having his jaw broken. Perkins filed a written internal affairs complaint with JSO shortly after the January 2008 incident. On January 21, 2011, almost three years after the incident, the JSO Internal Affairs Unit received an "in-house complaint" from the City of Jacksonville's Office of General Counsel regarding the January 2008 incident involving Perkins. The subject matter of the complaint was the JSO officer's excessive use of force against Perkins. The in-house complaint was then investigated by the JSO Internal Affairs Unit, which concluded that "the charge of Excessive Force against Police Officer R. J. Tolen #5597 be classified as NOT SUSTAINED."

41. In September 2008, a member of JSO dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head, leaving Mr. Lunsford paralyzed. The officer did so despite Lunsford's prior warning to the officer that Lunsford had four screws and a plate in his neck. *See Lunsford v. Rutherford, et. al.,* Case No.:3:09-cv-01015-MMH-MCR (M.D. Fla. Jacksonville Division). Then JSO Sheriff Rutherford had actual notice of Mr. Lunsford's encounter with JSO because of the federal lawsuit filed against him, yet he failed to conduct an Internal Affairs investigation into the incident. The JSO member involved was not disciplined or reprimanded for his actions against Mr. Lunsford.

42. In May 2010, a member of JSO fractured multiple bones in David Kemp's face by violently striking him as he laid on the ground in compliance with the officer's commands to do so. *See Kemp v. Rutherford et. al.,* Case No.: 3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division). Sheriff Rutherford had actual notice of Mr. Kemp's encounter with JSO because of the federal lawsuit filed against him, yet Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and officer involved and failed to discipline the officer involved.

43. In March 2012, members of JSO questioned Kyle Fowler concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members due to the behavior of the officers and told them he was not interested in speaking anymore, and began to walk towards his gate. As he did so, the JSO members knocked Mr. Fowler through a closed metal gate and onto the ground. The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him, injuring Mr. Fowler in the process of effectuating his false arrest. The charge on which Mr. Fowler was falsely arrested, resisting an officer without violence, was ultimately dismissed. The JSO members involved were not disciplined or reprimanded for their actions against Mr. Fowler.

44. In June 2013, a member of JSO violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident. As Mr. Slade was merely asking the officer when his insurance information would be taken following the accident, he was forcefully thrown to the ground. Mr. Slade was falsely arrested for resisting an officer without violence in violation of §843.02, Fla. Stat. (2012). The charges against

Mr. Slade were dismissed. The JSO member involved was not disciplined or reprimanded for his actions against Mr. Slade.

45. On November 12, 2014, at the Pretrial Detention Facility, a member of JSO violently slammed Deandre Ezell's head into a concrete wall, while Mr. Ezell was handcuffed. The use of force knocked Mr. Ezell unconscious and resulted in Mr. Ezell's hospitalization. At the time of the incident, Mr. Ezell was a minor.

46. In July 2015, members of JSO punched Kelli Wilson in the face after she refused their unlawful commands to hand over her cell phone. JSO officers proceeded to violently take Wilson to the ground, pulling her hair and attempting to rip her arms out from under her. Ms. Wilson was arrested for resisting without violence. The charge against Ms. Wilson was dismissed. JSO members were not disciplined or reprimanded for their use of force against Ms. Wilson.

47. In April 2016, members of JSO violently took down John Blessing while effectuating his arrest. The force caused Mr. Blessing to lose 75% of the function in his arm. The charges on which Mr. Blessing was arrested for, resisting without violence, disorderly intoxication, and battery, were ultimately dropped after the Court found the JSO officer did not investigate the alleged crime or establish probable cause. JSO members involved were not disciplined or reprimanded for their actions against Mr. Blessing.

48. On April 27, 2016, Mayra Martinez was at her place of employment, Scores, when JSO officers arrived after calls about her intoxication. JSO officers slammed Martinez into the pavement and punched her numerous times. Upon arrival at the Pretrial Detention Facility, JSO officers hit Martinez with a closed fist in her stomach, chest, and face, knocking her unconscious. Martinez remained handcuffed during the encounter.

49. On April 4, 2017, Connell Crooms was participating in a peaceful protest at Hemming Park Plaza in Jacksonville Florida, when a counter-protestor reached his arm over the shoulder of a member of JSO and stuck his middle finger in Mr. Crooms's face. Rather than apprehend the aggressor, members of JSO threw Connell Crooms to the ground, struck him repeatedly in the back and face, and fired a Taser into his back, all of which caused Mr. Crooms to lose consciousness and require hospitalization. Mr. Crooms is deaf and did not resist or disobey any of the officers' commands. The JSO members involved were not disciplined or reprimanded for their use of force against Mr. Crooms.

50. On April 26, 2017, Daniel Nyman was seeking treatment at UF Health Jacksonville when a member of JSO spat at Mr. Nyman, charged at Mr. Nyman, threw him to the ground, shoved Mr. Nyman's jaw into the ground with his knee, and then flipped Mr. Nyman over and kneed him in the back. Mr. Nyman required repair of his previously treated broken jaw and five days in the hospital as a result of the attack. The JSO members involved were not disciplined or reprimanded for their use of force against Mr. Nyman.

51. On June 23, 2017, Jonathan Williams was pulled over by JSO officers, who placed one handcuff on Mr. Williams before punching him twice in the face despite the fact he was not resisting. The JSO officer proceeded to throw Mr. Williams to the ground punching him in the back and kneeing him in the head, Mr. Williams suffered fractures in the right orbital wall, left inferior, and medial orbital wall of his skull, as well as soft tissue swelling and hematoma in the back of his head. The officers involved in the use of force were not reprimanded or disciplined.

52. On October 8, 2017, members of JSO responded to a Walmart Loss Prevention Office for a potential shoplifting incident involved a male individual. While effectuating his arrest, an officer grabbed Diana Murray, the male individual's significant other, by her neck and slammed

her against a wall, then a bench before again slamming her into the wall and bench. Both Ms. Murray and her significant other were cooperative with officers throughout the encounter. The JSO member involved has not been disciplined or reprimanded for the use of force against Ms. Murray, nor has it been fully investigated despite an open Internal Affairs file on the incident.

53. On November 13, 2017, a twelve-year old child, D.M. III, was walking home from school when JSO officers approached the young boy. When he did not comply with their request to stop and instead continued walking to his mother JSO officers slammed him on the ground. D.M. III suffered numerous fractures, a cervical strain, and a sprain. The officer involved in the use of force was not reprimanded or disciplined.

54. Accordingly, JSO has a practice, custom, and/or policy of failing to adequately investigate and discipline its officers for their excessive use of force.

## COUNT I
## 42 U.S.C. § 1983
## UNREASONABLE SEARCH and SEIZURE: EXCESSIVE FORCE
**(Defendant Thompson)**

55. Paragraphs 1 through 54 above are realleged and incorporated by reference herein.

56. Defendant Thompson's actions in slamming Ms. Welch into a concrete wall, punching her in the head and stomach, and pepper spraying her in the face, all while Welch was fully restrained by a four-point restraint, constituted an unreasonable seizure under the Fourth and Fourteenth Amendments of the United States Constitution.

57. The acts and omissions above were undertaken with Defendant Thompson's willful, wanton, callous, and knowing disregard of the clearly established rights of Ms. Welch under the law to be free from unreasonable searches and seizures.

58. As a direct and proximate result of Defendant Thompson's seizure, Ms. Welch suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, demands judgment against Defendant Thompson, individually, for:

(a) actual and compensatory damages;

(b) punitive damages;

(c) an award of attorney's fees and costs; and

(d) any other relief this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983
## FAILURE TO INTERVENE
**(Defendants Nichols, Taylor, Warren, Milberger, and Holden)**

59. Paragraphs 1 through 54 above are realleged and incorporated by reference herein.

60. Defendant Thompson violated Plaintiff's Fourth Amendment rights when she used excessive force against a fully restrained Welch in the form of an unprovoked beating.

61. Defendants Nichols, Taylor, Warren, Milberger, and Holden all had a reasonable opportunity to intervene as they watched and actively assisted Thompson using excessive force against Welch. However, all failed to do so.

62. The acts and omissions above were undertaken with Defendants Nichols, Taylor, Warren, Milberger, and Holden's willful, wanton, callous, and knowing disregard of the clearly established rights of Ms. Welch under the law to be free from unreasonable searches and seizures.

63. As a direct and proximate result of Defendants Nichols, Taylor, Warren, Milberger, and Holden's failure to intervene on Defendant Thompson's unconstitutional use of excessive

force, Ms. Welch suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, demands judgment against Defendants Nichols, Taylor, Warren, Milberger, and Holden, individually, for:

(a) actual and compensatory damages;

(b) punitive damages;

(c) an award of attorney's fees and costs; and

(d) any other relief this Court deems just and proper.

### COUNT III
### 42 U.S.C. §1883
### MUNICIPAL LIABILITY
### (Defendant Williams)

64. Paragraphs 1 through 54 above are realleged and incorporated by reference herein.

65. Defendant Williams, in his official capacity as Sheriff of the City of Jacksonville, and his agents and employees, acting within their authority and under color of state law, instituted and followed customs, practices, and/or policies which directly resulted in the use of excessive force against Ms. Welch, which was the moving force causing her injuries and is therefore actionable under 42 U.S.C. §1983 as a violation of the Fourth and Fourteenth Amendments to the United States Constitution. JSO has a widespread custom, practice, and/or policy of using excessive force. By failing to discipline officers for the use of excessive force against Ms. Welch, Defendant Williams has ratified his officers' decisions and reasons for those decisions, thus constituting a practice, custom, or policy. Alternatively, the officers acting on the scene were the final policy makers for the Sheriff's Office, as their decisions were not immediately or effectively reviewable.

66. JSO has a practice, custom, and/or policy of failing to adequately investigate and discipline its officers for their excessive use of force.

67. As a direct and proximate result of the actions and/or inactions of the Sheriff's Office, Ms. Welch has suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, demands judgment against Defendant, Sheriff Williams, in his official capacity as Sheriff for the City of Jacksonville, for:

(a) actual and compensatory damages;

(b) an award of attorney's fees and costs; and

(c) any other relief this Court deems just and proper.

## COUNT IV
## STATE LAW CLAIM: BATTERY
**(Defendant Williams)**

68. Paragraphs 1 through 54 above are realleged and incorporated by reference herein.

69. Plaintiff has satisfied all conditions precedent to bringing this action as required pursuant to §768.28, Fla. Stat. (2019) and §§112.201-112.205, Jacksonville Ordinance Code.

70. Defendant Thompson, a correctional officer of JSO, actually and intentionally struck Ms. Welch against her will, without legal justification.

71. Sheriff Williams, having given his officers the authority to use force against Ms. Welch, is liable for abuse of such authority.

72. As a result of Defendant Thompson's battery and abuse of her authority, Ms. Welch suffered damages, including, but not limited to, severe pain and suffering, physical injuries, mental anguish and emotional distress.

WHEREFORE, Plaintiff, demands judgment against Sheriff Williams in his official capacity as Sheriff for the City of Jacksonville, for:

(a) actual and compensatory damages;

(b) costs; and

(c) any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable.

DATED this 16th day of September, 2020.

Respectfully submitted,

    */s/ Camille E. Sheppard*
Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 55712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus, DeMaggio & Wilkison, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:   (904) 356-9661
Facsimile:   (904) 356-9667
Email:   sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF

km[welch.complaint]